UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| THERESA A. HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-1107 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance (DIB) benefits and supplemental security income (SSI) benefits. Plaintiff filed her applications for benefits on May 5, 2006, alleging an August 1, 2004 onset of disability.[1] (A.R. 127-38). Her claims were denied on initial review. (A.R. 77-84). On March 11, 2009, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 26-74). On April 2, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-25). On October 9, 2009, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, June 2006 is plaintiff's earliest possible entitlement to SSI benefits.

On December 7, 2009, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits.  Plaintiff raises four issues, the first three of which depend on evidence plaintiff never presented to the ALJ:

1.   Whether the Commissioner erred as a matter of law at step three of the sequential evaluation in failing to assign controlling weight to the opinion of her treating physician and mental health professional as required by 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), resulting in a flawed assessment of residual functional capacity;

2.   Whether the Commissioner erred in determining plaintiff's residual functional capacity by not incorporating all of her impairments;

3.   Whether the Commissioner erred in failing to properly evaluate and articulate whether plaintiff's impairments met or equaled the requirements of a listed impairment; and

4.   Whether the Commissioner failed to carry his burden of demonstrating that there is other work in the national economy that plaintiff can perform.

(Statement of Issues, Plf. Brief at 2-3, docket # 12).  Upon review, I recommend that plaintiff's request under sentence six of 42 U.S.C. § 405(g) for remand to the Commissioner for consideration of new evidence be denied because plaintiff has not satisfied her statutory burden.  I further recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from August 1, 2004, through the date of the ALJ's decision. Plaintiff had not engaged

in substantial gainful activity on or after August 1, 2004. (A.R. 17). Plaintiff had the following severe impairments: "cervical degenerative disc disease, lupus, and bilateral carpal tunnel syndrome." (A.R. 17). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b); lifting up to 10 pounds occasionally, standing/walking about 2 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday, with normal breaks. Giving claimant the full benefit of the doubt, I also find that she is limited to occasional handling (gross manipulations), fingering (fine manipulations), and feeling with either hand.

(A.R. 21). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> In June 2006, claimant said she lived in a house with her three children and a sickly friend, did household chores with help from her children, cooked a couple of times a week, shopped three times a month, and paid bills. She stated that she needed help combing hair, needed reminders to take her medications because her depression caused her to forget a lot, no longer drove because she lacked a vehicle, and needed encouragement all the time. Claimant further stated that the heat from the stove or oven made her feel faint, handling bank accounts was too stressful and caused depression, her bones ached daily, and she had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering, concentrating, understanding, using her hands, and getting along with others. Claimant also said she was limited to walking two blocks before needing to rest for an hour to alleviate the pain and dizziness, could not watch any depressing movies because they caused her to cry and made her blood pressure rise, could follow spoken instructions as long as they were not from the devil, and got along with people who were nice, honest, friendly, and not prejudiced. Claimant said she could not handle stress, hated changes in routine, was

-4-

scared of her medicine because of "after affects" and was scared of the world because of all the evil, lying, stealing, cheating, hate, and prejudice (Exhibit 4E)[A.R. 175-82].

There is no indication in the record why the claimant would be limited in her ability to squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate, understand, and get along with others.

At the hearing, the claimant testified that she lived in a house with her long time boyfriend (sometimes referred to as her husband in the records) and two children, and did not know what her physician was talking about when he said she was on disability. She testified that she had a high school education with some training in computers, but could not work because carpal tunnel and arthritis in her hands, inability to straighten her fingers, wrist pain, kidney problems that caused swelling in her mid-back region, and feeling dizzy and faint after taking her medications. She also complained of migraine headaches, ringing in her ears, problems getting along with people, not wanting to leave her home, and pain in all her joints. Claimant testified that she stopped working seven years ago because she could not straighten her fingers, and had declined carpal tunnel surgery because she was afraid. She further testified that she was able to read, do math calculations, and make change, but could not write because of her hand problem, owned a computer, but could not use it because of her hand problem, and had difficulty walking. Claimant testified that she used to get her children off to school, but now was still sleeping when they left, sometimes needed assistance dressing, had a valid driver's licence, but did not drive, could no longer play games on the computer or play sports, used to be a paid artist, but could no longer draw, could not travel because she needed to use the restroom frequently, and was limited to walking one block before needing to rest. She testified that she had not received any mental health therapy in over eight years, and that it hurt when people touched her [A.R. 32-65].

There is no evidence in the record of a kidney problem. Claimant was treated for renal failure when she had hypertension urgency and was hospitalized, but that condition resolved before she left the hospital. The one mention of migraines in the record indicates that the claimant did not have migraines, but had headaches related to elevated blood pressure that resolved when her blood pressure was withing normal limits. There is no evidence of an inability to straighten fingers, dizziness, ringing in ears, hallucinations, or problems leaving home or getting along with people.

The record indicates that the claimant alleged an onset date of August 1, 2004, but there are no legible records regarding her degenerative disc disease and carpal tunnel syndrome prior to May 2006. In January 2007, claimant denied chiropractic care, physical therapy, surgery, and injection therapy, and [] could not say what medications she was prescribed. Claimant was diagnosed with bilateral carpal tunnel syndrome in May 2006, but never underwent surgery or received treatment [A.R. 745-46].

An examination in January 2007 revealed normal gait, normal heel walking, full back range of motion, full head and neck motions, intact higher cortical sensation, normal reflexes, normal motor functions, and negative straight leg raises. Claimant could dress/undress without assistance, squat and recover, bend at the waist, and get on/off the examination table without difficulty, with no evidence of spasm, point tenderness, atrophy, or weakness. Dr. Szymanski advised against surgery for claimant's cervical degenerative disc disease [A.R. 469-71, 666-68].

In April 2007, claimant started medication for systemic lupus erythematosus. She felt better by May 2007, with marked improvement in all her joints. In July 2007, Dr. Swanson listed her diagnosis as systemic lupus erythematosus without laboratory confirmation, but with decreased compliment levels and alopecia, resolved. Claimant was a "no show" for her October 2007 appointment with Dr. Swanson. At her appointment in September 2008, claimant was doing well with no evidence of synovitis [A.R. 529-36, 672-80].

Claimant's rheumatologist never gave an opinion as to any limitations claimant may have related to her ability to perform work activities. An undated and unsigned form from Dr. Orzame's office indicates that the claimant could sit for four hours in an eight-hour workday; and lift/carry up to ten pounds.

In sum, claimant can perform sedentary work lifting up to 10 pounds occasionally, standing-walking about 2 hours in an 8-hour workday; sitting approximately 6 hours in an 8-hour workday, with normal breaks; and occasional handling, fingering, and feeling with either hand.

(A.R. 21-23). Plaintiff was not able to perform her past relevant work. (A.R. 23). Plaintiff was 38 years old as of her alleged onset of disability and 43 years old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 23). Plaintiff has a high-school education and is able to communicate in English. (A.R. 23). The ALJ found that the transferability of jobs skills was not material to a disability determination. (A.R. 23). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 12,800 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 67-72). The

ALJ found that this constituted a significant number of jobs.  Using Rules 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (A.R. 24-25).

## 1.

Plaintiff argues throughout her brief that the ALJ's decision is not supported by substantial evidence, relying on evidence that she never presented to the ALJ before his decision.  (Plf. Brief at 12-16, 21, 23-24, 26, 29, docket # 12).  This is patently improper.  It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.[2]  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001);  *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The court is not authorized to consider plaintiff's proposed additions to the record in determining

---

[2] The court's order directing the filing of briefs states:  "Initial briefs may not exceed 20 pages without leave of court."  (4/1/10 Order, docket # 11).  Plaintiff's attorney offers no explanation for flouting the court's order by filing a 34-page brief without leave of court.  This is not a first offense.  *See, e.g.*, *Ewing v. Commissioner*, No. 1:10-cv-17, 2010 WL 6090420 (W.D. Mich. Nov. 29, 2010) (Attorney Mishler filed a brief ten pages in excess of the applicable page limitation and raised the same four issues, relying on evidence never presented to the ALJ).  Plaintiff's attorney could have easily stayed within the page limitation in both cases if he had focused on controlling Sixth Circuit authority by omitting all arguments based on evidence that was never presented to the ALJ.  Counsel persists in citing Seventh Circuit cases that conflict with the controlling law in this circuit.  Plaintiff's attorney is expressly advised that any future briefs ignoring the controlling Sixth Circuit authority or disregarding the applicable page limitation will result in the imposition of sanctions.

whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last paragraph of plaintiff's brief contains a passing request for remand to the Commissioner. (Plf. Brief at 33). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried, her burden of demonstrating that a remand under sentence six of 42 U.S.C. § 405(g) is warranted. Assuming that plaintiff had not ignored her statutory burden, the documents she now offers could not support a sentence six remand.

A.    New Evidence

The January 2009 records from Richard T. Swanson, M.D. (A.R. 749-54) are not new, because they were created before the ALJ's April 2, 2009 decision.  *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.  The records from social worker Silvia Orian (A.R. 773-94, 796-800), Riverwood Center (A.R. 755-71), and Lakeland Medical Center (A.R. 802-10) are new, because they were generated after the ALJ's decision.

B.    Good Cause

Contrary to plaintiff's assumption, "good cause" is not established solely because evidence was not generated until after the ALJ's decision.  The Sixth Circuit has taken a "harder line."  *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision.  *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 485.  Plaintiff provides no explanation why she waited until after the ALJ's decision to begin her therapy sessions with Ms. Orian.  She has not shown good cause.

C.    Material Evidence

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion.  *See Ferguson*, 628 F.3d at 276; *Foster*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  The ALJ held that plaintiff was not disabled from August 1, 2004, through April 2, 2009.  The new evidence does not purport to assess plaintiff's condition during the relevant time period.  Three weeks after the ALJ issued his decision finding that plaintiff

-9-

was not disabled, plaintiff received her "initial assessment" by social worker Sylvia Orian. (A.R. 787-90, 796). Thus, Ms. Orian did not provide treatment at any time during the period at issue. Assuming Ms. Orian had provided care during the relevant time period, her opinions would not have been entitled to any particular weight. There is no "treating social worker" rule. Social workers are not "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a), (d), 416.913(a), (d). Their opinions are not treating-source opinions. *See* 20 C.F.R. §§ 404.1502, 416.902 ("*Treating source* means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); *see also Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007). The treating physician rule does not apply to social worker opinions. *See Eldridge v. Apfel*, No. 98-5427, 1999 WL 196564, at * 2 (6th Cir. Mar. 30, 1999) ("[A]lthough the administrative judge is required to consider evidence presented by certain 'acceptable medical sources' including psychiatrists and psychologists, a social worker is simply considered an 'other source' whose opinion the administrative law judge *may* consider."). It is pellucid that Ms. Orian's August 2009 mental residual functional capacity questionnaire responses would not have persuaded the ALJ to reach a different decision. Ms. Orian's opinions were based on plaintiff's subjective statements, not objective test results. (*See* A.R. 799 at ¶ 4). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. I find that the documents Ms. Orian generated after the ALJ's decision are not material.

Likewise, the Riverwood and Lakeland records are not material. Riverwood's records (A.R. 755-71) do not include objective test results, and Lakeland's objective tests would not support plaintiff's claims. Plaintiff's May 12, 2009 carotid ultrasound revealed "no sonographic

evidence of stenosis."  (A.R. 810).  Her June 29, 2009 brain MRI revealed "minimal suspected microvascular disease, no evidence for acute or subacute ischemia [and] no enhancing infarct or mass."  (A.R. 805).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.  I recommend that her request for remand be denied.  Plaintiff's arguments must be addressed on the record presented to the ALJ.

## 2.

Plaintiff argues that the ALJ "erred as a matter of law at Step Three of [the] sequential evaluation in failing to assign controlling weight to the opinion of her treating physician and mental health professional[3] as required by 20 C.F.R. § 404.1527(d)(2), resulting in a flawed assessment of residual functional capacity."  (Plf. Brief at 20).  This argument conflates a number of distinct concepts.  It does not provide a basis for disturbing the Commissioner's decision.

## A.

"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act."  *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third

---

[3]Plaintiff's argument that the ALJ should have given greater weight to Ms Orian's responses to a mental residual functional capacity questionnaire is frivolous.  Ms. Orian was not a "treating mental health professional" during the period at issue.  Her questionnaire responses were never presented to the ALJ, and they cannot be considered in the manner plaintiff advocates.  *See Jones v. Commissioner*, 336 F.3d at 478.

step if the claimant can then demonstrate that her impairment meets the durational requirement and

'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment,

the fourth step requires the claimant to prove that she is incapable of performing work that she has

done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance

of past work, then other factors, including age, education, past work experience, and residual

functional capacity, must be considered to determine if other work can be performed.  The burden

shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."

*White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d

601, 602-03 (6th Cir. 2009).

   The administrative finding whether a claimant meets or equals a listed impairment

is made at step 3 of the sequential analysis.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii);

*see also Coldiron v. Commissioner*, 391 F. App'x 435, 438 (6th Cir. 2010).   The administrative

finding of a claimant's RFC is made between steps 3 and 4.   *See* 20 C.F.R. §§ 404.1520(a)(4)

("Before we go from step three to step four, we assess your residual functional capacity."),

416.920(a)(4) (same); *see also Vorholt v. Commissioner*, No. 09-6404, 2011 WL 310700, at * 3 (6th

Cir. Feb. 2, 2011); *Anderson v. Commissioner*, 406 F. App'x 32, 33 (6th Cir. 2010).

B.

   Plaintiff argues that the ALJ failed to give adequate weight to the opinions Nilda

Orzame, M.D., expressed in Michigan Department of Human Services forms she completed on

plaintiff's behalf:  (1) a March 11, 2007 document stating that plaintiff would be unable to work for

six months; and (2) January and March 2008 documents indicating that plaintiff would be unable

-12-

to work for an "indefinite" period.  (A.R. 682-83).  (Plf. Brief at 20-21)(citing A.R. 682-85).  The ALJ considered Dr. Orzame's opinions on the issue of disability and other issues reserved to the Commissioner, and he found that her opinions were entitled to little weight.  (A.R. 18-19).  I find no error.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton v. Commissioner*, 315 F. App'x  595, 598 (6th Cir. 2009); *Warner*, 375 F.3d at 390.

"Generally, the opinions of treating physicians are given substantial, if not controlling deference."  *Warner*, 375 F.3d at 390.  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected

opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d at 651; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009). The ALJ considered Dr. Orzame's opinions and

-14-

found that they were entitled to little weight. Her March 2007 statement was inconsistent with the record as a whole, including plaintiff's relatively infrequent need for medical treatment. Dr. Orzame failed to identify specific tasks that plaintiff was unable to perform. (A.R. 18). Dr. Orzame's 2008 opinions were not accompanied by objective findings supporting the proffered restrictions in activities of daily living and work activities. (A.R. 19). I find no violation of the treating physician rule.

## C.

Plaintiff argues that the ALJ's analysis "failed to evaluate the existence of an impairment or combination of impairments that might have been medically equivalent to an impairment specified in the Listing of Impairments." (Plf. Brief at 27). This argument lacks foundation, because it relies on evidence that was never presented to the ALJ. Further, the ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment is well supported:

> Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

> Claimant can effectively ambulate and perform fine and gross manipulations on a sustained basis and without assistance.

> Claimant has a diagnosis of systemic lupus erythematosus, but does not have involvement of two or more organs /body systems with one of the organs/body systems involved to at least a moderate level of severity and at least two of the constitutional symptoms or signs; OR repeated manifestations of lupus with at least two of the constitutional signs and or symptoms and one of the following in the marked level: limitations in activities of daily living, limitation in maintain[ing] social functioning, limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace.

(A.R. 20-21). The ALJ noted that plaintiff's January 2007 examination revealed that she had "normal gait, normal heel walking, full back range of motion, full head and neck motions, intact cortical sensation, normal reflexes, normal motor functions, and negative straight leg raises. Claimant could dress/undress without assistance, squat and recover, bend at the waist, and get on/off the examination table without assistance, with no evidence of spasm, point tenderness, atrophy, or weakness." (A.R. 23; *see* A.R. 469-71). He observed that plaintiff began taking medication for systemic lupus erythematosus in April 2007, and within a month she experienced marked improvement in all her joints. In July 2007, plaintiff's treating rheumatologist, Richard T. Swanson, M.D., offered a diagnosis of systemic lupus erythematosus without laboratory confirmation. Plaintiff failed to appear for her October 2007 appointment. When plaintiff returned in September 2008, Dr. Swanson noted that she was doing well without evidence of synovitis. Dr. Swanson did not offer an opinion as to any functional limitations stemming from plaintiff's systemic lupus erythematosus (A.R. 23; *see* A.R. 529-49, 643-51). The ALJ's findings that plaintiff did not meet or equal the requirements of any listed impairment are supported by more than substantial evidence.

## D.

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence because the ALJ failed to "adequately take into account the severity of her mental impairments."[4] (Plf. Brief at 25-26). Plaintiff emphasizes that she testified that she suffers

---

[4]This argument, like its predecessors, is fundamentally flawed because it is based on evidence that plaintiff never presented to the ALJ. Plaintiff's related argument that the ALJ failed to "properly investigate" her mental impairments (Plf. Brief at 26) cannot withstand scrutiny. It was plaintiff's burden to produce evidence in support of her disability claim, not the ALJ's burden. *See Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008) ("[T]he claimant bears the ultimate burden of proving disability."); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at *

from hallucinations, dizzy spells, and memory loss. She isolates herself, experiences confrontations with coworkers, and has side effects from her medications. (*Id.*). The ALJ found that plaintiff's testimony was not fully credible and that she retained the RFC for a limited range of sedentary work. Giving plaintiff the benefit of a doubt, the ALJ's RFC finding included restrictions limiting plaintiff to work requiring no more than occasional handling (gross manipulations), fingering (fine manipulations), and feeling with either hand. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). I find that the ALJ's RFC determination is supported by substantial evidence.

## E.

Plaintiff disagrees with the ALJ's factual finding that her testimony was not fully credible. (Plf. Brief at 25-26). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the

---

2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."). Plaintiff's prehearing brief (A.R. 216-20) did not assert that plaintiff had *any* mental impairments. She had not required counseling. (A.R. 63). The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because she was represented by an attorney at the hearing. *See Wilson*, 280 F. App'x at 459; *Trandafir v. Commissioner*, 58 F. App'x 113, 115 (6th Cir. 2003).

Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ's opinion contains a lengthy discussion of the medical evidence, plaintiff's subjective complaints, and the reasons why the ALJ found that plaintiff's testimony was not fully credible. (A.R. 21-23). Among other things, the ALJ found that plaintiff's daily activities undercut her testimony claiming greater functional limitations. *See Walters v. Commissioner*, 127 F.3d at 532; *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ credibility finding is supported by more than substantial evidence and the ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

**3.**

Plaintiff argues that the Commissioner did not sustain his step five burden of demonstrating that there were a substantial number of jobs plaintiff was capable of performing. (Plf. Brief at 30-32). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 12,800 jobs in the State of Michigan that the hypothetical person would be capable of performing: 11,000 surveillance system monitor jobs and 1,800 election clerk jobs. (A.R. 67-72). I find that the ALJ's decision is supported by more than substantial evidence.

A.     Dictionary of Occupational Titles (DOT)

Plaintiff argues that an ALJ commits reversible error by accepting a VE's expert opinion based on the DOT[5] rather than the O*NET.[6] (Plf. Brief at 30-32). This court has previously considered and rejected this argument:

> [T]he court disagrees with plaintiff's position that the ALJ erred by adopting the VE's opinions based upon the "outdated" DOT. On the contrary, while the DOT appears on the list of publications from which the agency can take administrative notice of reliable job

---

[5]Under SSR 00-4p, the ALJ was required to ask the VE on the record whether the evidence he had supplied was consistent with the DOT, and he did so here. (A.R. 66). *See Lindsley v. Commissioner*, 560 F.3d 601, 605 (6th Cir. 2009); *see also Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, SSR 00-4p (reprinted at 2000 WL 1898704, at * 4 (SSA Dec. 4, 2000)).

[6]"The function of the VE is to advise the ALJ of jobs found among various categories of employment which the claimant can perform with her limitations. The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor h[is] finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Commissioner*, 345 F. App'x 163, 168 (6th Cir. 2009) (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)). The DOT is a reference source available to vocational experts, but it is certainly not the only one. *See Baranich v. Barnhart*, 128 F. App'x 481, 486 n. 3 (6th Cir. 2005); *see also* 20 C.F.R. §§ 404.1560(b)(2), .1566(d), .1567, 416.960(b)(2), .966(d), .967.

> information," the "O*NET" does not. *See* 20 C.F.R. § 404.1566(d)(1)-(5). Furthermore, to the extent that plaintiff contends that the ALJ erred by accepting a flawed VE[] opinion, this contention fails. The ALJ does not have an affirmative duty to interrogate a VE to expose potential errors in his expert opinions. *See Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009). "This obligation falls to plaintiff's counsel, who had the opportunity to cross-examine the VE." *Beinlich v. Commissioner of Social Security*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (plaintiff's counsel had [an] obligation to cross-examine the VE and bring out any conflicts between the VE's testimony and the DOT; "the fact that plaintiff's counsel did not do so is not grounds for relief).

*Ewing v. Commissioner*, 2010 WL 6090420, at * 8. There is no reason for a different result in this case. Plaintiff's attorney had a more than adequate opportunity to cross-examine the VE and bring any perceived weaknesses in his expert testimony to the ALJ's attention. The only question he asked the VE regarding the election clerk and surveillance systems monitor jobs was how many days a month a person could be absent from those jobs and remain employed. (A.R. 73).

B.   Jobs Identified by the VE

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff could work as a security surveillance monitor, because the position was "declared unreliable and obsolete" in *Cunningham ex rel. Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010). (Plf. Brief at 32). The Sixth Circuit's unpublished decision in *Cunningham* did not declare that the job of security monitor was unreliable or obsolete.[7] Further, assuming that all the security surveillance

---

[7]In *Cunningham*, Mr. Cunningham died while his lawsuit challenging the Commissioner's decision denying his application for DIB benefits was pending. The district court affirmed the Commissioner's decision. A divided appellate panel found that the administrative record was "insufficient to address Cunningham's claim" and remanded the matter for further administrative proceedings. 360 F. App'x at 615. Judge Ryan dissented, noting that the majority had departed from the proper scope of judicial review in order to achieve this result. *Id.* at 616 (Ryan J. dissenting). No subsequent Sixth Circuit decision has cited the unpublished *Cunningham* decision or questioned the "reliability" of VE testimony in a similar fashion. *See Kyle v. Commissioner*, 609 F.3d 847, 851-53 (6th Cir. 2010); *see also Anderson v. Commissioner*, 406 F. App'x 32, 35 (6th Cir. 2010); *Boseley v. Commissioner*, 397 F. App'x 195, 200-01 (6th Cir. 2010).

monitor jobs were eliminated, the remaining 1,800 election clerk jobs identified by the VE would constitute substantial evidence supporting the Commissioner's decision.  *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number and collecting cases where as few as 174 positions were found to be a significant number); *Hall v. Bowen*, 837 F.2d 272, 275  (6th Cir. 1988) (1,350 is a significant number);  *Martin v. Commissioner*, 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number); *see also Anderson v. Commissioner*, 406 F. App'x at 35; *Nejat v. Commissioner*, 359 F. App'x 574,  579 (6th Cir. 2009) (collecting cases holding that as few as 500 jobs constituted a significant number).

Plaintiff argues that she could not perform the election clerk job because her "mental impairments would prevent her from successfully interacting with customers and coworkers."  (Plf. Brief at 31-32).  Plaintiff's RFC did not include such limitations.  The ALJ found that plaintiff's subjective complaints were not fully credible.  It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints.  *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.").  The VE's testimony provides substantial evidence supporting the ALJ's finding that plaintiff was not entitled to DIB and SSI benefits.

**Recommended Disposition**

      For the reasons set forth herein, I recommend that plaintiff's request for remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied.  I further recommend that the Commissioner's decision be affirmed.


Dated:  June 15, 2011         /s/  Joseph G. Scoville                     
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

      Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).